1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF PUERTO RICO

**CIRO ENERGY PARTNERS, LLC**, et al.,

**Plaintiffs,**

**v.**                                                    Civil No. 12-1917 (GAG)

**ROBERTO TORRES-TORRES**, et al.,

**Defendants.**

## OPINION AND ORDER

The court **PARTIALLY DENIES** Defendants' motion to dismiss the claim for improper venue under 12(b)(3), which arises from of a forum selection clause in an asset purchase agreement requiring any actions brought "under" the agreement to be filed before the Court of First Instance in Ponce, Puerto Rico.  (Docket No. 95-1 at 10.)

The court's denial, however, does not sound the death knell for this particular claim.  The legal gardener need not dig too far to find the roots of the dismissal; it lies entirely in newly issued procedural jurisprudence lumping forum selection clause challenges in with motions to transfer rather than motions to dismiss for improper venue (i.e., distinguishing *forum non conveniens* and Section 1404 from Section 1391, respectively).  "Whether venue is 'wrong' or 'improper' [under Rule 12(b)(3)] depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws, and those provisions say nothing about a forum-selection clause."  Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for the W. Dist. of Tex., No. 12-929, slip op. at 4 (2013).  Last week, the Supreme Court decided Atlantic Marine, which holds that *forum non conveniens* provides the appropriate vehicle through which to adjudicate forum selection clauses that direct cases from federal fora to a state or foreign court.  Id. at 9-10 ("Instead, the appropriate way

**Civil No. 12-1917 (GAG)**

to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*.").  Defendants need not resubmit a motion for transfer based on *forum non conveniens*; the court gets it and exercises its prerogative to address the matter *sua sponte*.

The asset purchase agreement is between Defendant Torres's LLC, Tropical Solar Farm Holding, and CIRO Two and CIRO Three, affiliates of CIRO Energy Corps.  (Docket No. 95-1 at 1.) CIROs Two and Three are labeled as "Buyers." (Id.) The agreement states that Tropical Solar and the Puerto Rico Electric Power Authority ("PREPA") entered into two power purchase agreements ("PPAs") on November 3, 2011 (the "Guayanilla Project") and December 13, 2011 (the "Eastside PPA").  CIRO Energy Corps. and Torres entered into two escrow agreements on December 27, 2011 with respect to the Eastside PPA and the Guayanilla Project.  (Id.) They agreed to amend those escrow agreements to finalize them and Tropical Solar and CIROS Two and Three agreed to execute assignment and assumption agreements concerning the Eastside PPA and the Guayanilla Project.  (Id. at 2.) The agreement states, "The Closing of the purchase and sale of" both PPAs "shall take place on the date established under the Amended Final Escrow Agreement" and proceeds to lay out detailed payment schemes.  (Id. at 5.) Lastly, the agreement states, "Any claim under this Agreement must be submitted in the First Instance Court in Ponce[,] Puerto Rico." (Id. at 10.)

In the complaint, the gravamen of the predicate acts and pattern of racketeering activity surrounds these agreements, the Guayanilla Project and the Eastside PPA, and Torres's misrepresentations.  This contract exemplifies several of the predicate acts upon which Plaintiff relies in submitting its RICO claim.  The forum selection clause, furthermore, definitively directs any filings under the agreement to the Puerto Rico court in Ponce.

Preliminarily, concerns exist over the legitimacy of this document and whether it contains a valid forum selection clause.  Who signed it and what is/was this person's title?  This document seemingly encompasses the crux of Plaintiff's complaint: two PPAs were fraudulently purchased through misrepresentations in agreements and other forms of communication.  That is an

**Civil No. 12-1917 (GAG)**

1   oversimplification, as a lot of other alleged predicate acts are discussed, but this agreement

2   ostensibly embodies the soul of the claim.

3        Proceeding to the ultimate question, the court explores whether a federal district court may

4   dismiss a RICO case directed to a state court based on a forum selection clause.  As Defendants

5   point out, the Third Circuit has addressed this issue.  "[P]leading alternative non-contractual theories

6   [such as RICO claims] is not alone enough to avoid a forum selection clause if the claims asserted

7   arise out of the contractual relation and implicate the contract's terms."[1]  Crescent Int'l., Inc. v.

8   Avatar Cmty's., Inc., 857 F.2d 943, 944-45 (3d Cir. 1988).  The Third Circuit subsequently

9   elaborated on Crescent by stating, "[W]hether or not a forum selection clause applies depends on

10  what the specific clause at issue says.  Drawing analogy to other cases is useful only to the extent

11  those other cases address contract language that is the same or substantially similar to that at issue."

12  John Wyeth & Brother Ltd. v. Cigna Int'l. Corp., 119 F.3d 1070, 1075 (3d Cir. 1997).

13       In Crescent, the clause stated that "'any litigation *upon* any of [its] terms . . . shall be

14  maintained' in a state or federal court in Miami, Florida.'" 857 F.2d at 944 (emphasis added).  Here,

15

16

---

17  [1] A district court in the First Circuit has cited Crescent favorably in adopting similar rationale
    requiring dismissal based on broadly worded forum selection clauses and underlying claims that do
18  not directly implicate the contract. Reder Enters. v. E. Loomis, Fargo & Co. Corp., 490 F. Supp. 2d
    111, 115-16 (D. Mass. 2007) (magistrate judge's report and recommendation subsequently adopted).
19  District courts in every circuit have found that pleading a non-contractual claim will not, by itself,
    be sufficient to avoid a forum selection clause if the claim arises out of the parties' contractual
20  relationship and implicates the contract's terms. See Roby v. Corp. of Lloyd's, 996 F.2d 1353, 1361
    (2d Cir. 1993); O&G Energy, LLC v. Rimkus Consulting Group, LLC, 2011 U.S. Dist. LEXIS
21  142490, *10-12 (E.D. Ky. Dec. 12, 2011); Refco Inc. Sec. Litig. v. Aaron, 826 F. Supp. 2d 478, 499-
    500 (S.D.N.Y. 2010) (same); Ebay, Inc. v. Digital Point Solutions, Inc., 2009 U.S. Dist. LEXIS
22  80335, *15-16 (N.D. Cal. Aug. 17, 2009) (same); Xantrex Tech. Inc. v. Advanced Energy Indus.,
    2008 U.S. Dist. LEXIS 41206, *17-18 (D. Colo. May 23, 2008) (same); Worldwide Network Servs.,
23  LLC v. Dyncorp Int'l., 496 F. Supp 2d 59, 63 (D.D.C. 2007) (same); Belifore v. Summit FCU, 452
    F. Supp. 2d 629, 632 (D. Md. 2006) (same); Gaston-Thacker v. School Board of Dade Cnty., 1999
24  U.S. Dist. LEXIS 9611, *10-12 (S.D. Fla. Apr. 22, 1999) (same); Texas Source Group v. CCH, Inc.,
    967 F. Supp 234, 238 (S.D. Tex. 1997) (same);  Stereo Gema v. Magnadyne Corp., 941 F. Supp.
25  271, 277 (D.P.R. 1996) (same); Vijuk Equipment, Inc. v. Otto Hohner KG, 728 F. Supp. 1368, 1371
    (N.D. Ill. 1990) (same); Knutson v. Rexair, Inc., 749 F. Supp. 214, 217 (D. Minn. 1990) (same).
26
27

28                                                  3

**Civil No. 12-1917 (GAG)**

the clause reads, "Any claim *under* this Agreement must be submitted . . . ." (Docket No. 95-1 at 10 (emphasis added).)   The distinction is thus any claim "upon" versus any claim "under." Webster's New World College Dictionary defines "upon" as "on," and states that they are interchangeable.  Webster's New World College Dictionary 1570, 4th ed. 2001.  The dictionary defines "on" as "having a basis of or having its ground in." Id. at 1007.  "Under," in relevant terms, is defined as "subject to the . . . influence of." Id. at 1556.  This definition implies that "[a]ny claim [subject to the influence of] this Agreement must be submitted in the First Instance Court in Ponce, Puerto Rico."  It seems evident that the RICO claim is influenced by the subject of the asset purchase agreement.  The Complaint states as much: "The use of the interstate and/or international electronic wire communications was an integral and essential part of the Scheme to Defraud, as the numerous . . . Asset Purchase Agreements . . . were transmitted to Plaintiff via these means." (Docket No. 20 at 59.)

Equally important, CIRO also sues under color of state law for fraud in the inducement, conversion, breaching the duty of good faith and fair dealing, loss of opportunity, and unjust enrichment.  "Commercial contractual issues are commonly intertwined with claims in tort or criminal or antitrust law." Stewart Org., Inc. v. Ricoh Corp., 810 F.2d 1066, 1070 (11th Cir. 1987), aff'd., 487 U.S. 22 (1988) .

Lastly, and most significantly, CIRO also sues for breach of contract pursuant to the terms and conditions of the letters of understanding as set out in the "Definitive Document Agreements," which include the asset purchase agreement.  Clearly, this claim is one "under" the asset purchase agreement.  Given the Supreme Court's recent reiteration of the sanctity of forum selection clauses,[2] the court is compelled to **DISMISS without prejudice** the complaint if the forum selection clause is valid.

---

[2] "When parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations.  A forum-selection clause, after all, may have figured centrally in the parties' negotiations [and been] . . . a critical factor." Atlantic Marine, slip op. at 16.

4

**Civil No. 12-1917 (GAG)**

1

2       The court leaves it to the parties to simultaneously brief this issue and directs them to file by

3       December 18, 2013 at 5:00 p.m.  The parties shall address the validity of the forum selection clause

        and the contract's signatories.  **No extensions will be allowed.**

4

5

6       **SO ORDERED.**

7       In San Juan, Puerto Rico this 12th day of December, 2013.

8

9                                                                       /S/ Gustavo A. Gelpí

10                                                                      GUSTAVO A. GELPI

11                                                              United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                            5